

February 26, 2024

Chief Judge Margo K. Brodie
U.S. District Court, Eastern District
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:  United States v. Shakeem Rankin
            Criminal Docket No. 23-0024 (MKB)

Dear Honorable Margo Brodie:

    As you may recall, the undersigned is counsel to Mr. Shakeem Rankin, the Defendant in the above referenced matter. On Wednesday February 21, 2024, at the close of the Suppression Hearing, your Honor directed both sides to submit relevant case law in relation to the voluntariness of a suspect's statements to law enforcement while in his home, in order to aid the Court in its determination of a custodial interrogation.

    What follows is the Defense submission:

- **United States v. Kourani, 16 F.4th 345 (2d Cir. 2021)**

    To evaluate the voluntariness of a suspect's statements to police officers, the Second Circuit looks at the "totality of the circumstances," including "(1) the characteristics of the accused, (2) the conditions of interrogation, and (3) the conduct of law enforcement officials."

- **United States v. Ali, 86 F.3d 275 (2d Cir. 1995)**

    An accused is in "custody' when, in absence of actual arrest, law enforcement officials act or speak in manner that conveys the message that they would not permit the accused to leave. Herein, the court held that a reasonable person in defendant's shoes would not have felt free to leave when he was asked to step away from the boarding area at an airport, his travel documents were removed, and he was surrounded by seven officers with visible

Roger Victor Archibald, PLLC • Attorneys & Counsellors at Law • 26 Court Street, Suite 711 • Brooklyn, New York 11242
Tel No.: (718) 237-1111 • Facsimile (718) 237-1425 • www.Brooklynatty.com • rva@brooklynatty.com

handguns. Mr. Ali was therefore in "custody," and he should have received Miranda warnings, especially where two officers testified that they would not have allowed Ali to leave had he tried.

- **United States v. FNU LNU, 653 F.3d 144, 153 (2d Cir. 2011)**

Relevant considerations include: (1) the interrogation's duration, (2) its location (e.g., at the suspect's home, in public, in a police station, or at the border), (3) whether the suspect volunteered for the interview, (4) whether the officers used restraints, (5) whether weapons were present and especially whether they were drawn, and (6) whether officers told the suspect he was free to leave or under suspicion.

- **United States v. Whyte No. 21-cr-00390 (JMA) (ARL), 2023 WL 8096926 (E.D.N.Y. Nov. 21, 2023)**

"Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that Miranda rights have been waived." at *7 (internal quotation marks and citation omitted). The comprehension was high in Whyte because Mr. Whyte had already been convicted of 5 felonies. He was "well versed in the criminal justice system." at *2.

- **United States v. Butt, No. 18-CR-00087 (NSR), 2019 WL 479117 (S.D.N.Y Feb. 7, 2019)**

The Court held that the suspect's statements were not voluntary: Sixteen officers spread throughout his home and restricted his movement to the living room couch, with one officer monitoring him and supervising him constantly. His wife was relegated to a different room and kept under the supervision of another officer, thereby depriving Butt of access to his only potential confidante. Butt also had no access to his phone or computer. There was credible testimony that the officers were not allowing but to speak with his wife during the search. The officers disabled Butt's surveillance camera system. Even though this did not constitute a due process violation, it is an objective factor that would contribute to a reasonable person feeling a significant restriction on their freedom of movement. Butt had no access to communication channels, could not speak to any of his confidantes, and had no safe space within his home where he could retreat. The Court found that he was made to be as isolated and cut off from the outside world within his home as he would have been had he been in some isolated police cite.

- **United States v. Carver, 22-CR-316 (JS), 2024 WL 36988, at *8 (E.D.N.Y. Jan. 3, 2024), citing United States v. Newton, 369 F.3d 659, 672 (2d Cir. 2004)**

Even if police officers in a suspect's home tell the suspect he is free to leave, that is not freedom. He is home; he has nowhere else to go. If he leaves his home, police officers

remain in his home. The question is whether a reasonable person would understand his freedom of action is essentially, if not literally, curtailed to a degree associated with formal arrest. In Carver, no weapons were drawn or displayed by law enforcement, and officers did not comer him and isolate him in one room. The court ruled that Mr. Carver was not in custody.

- **United States v. Gabriel, No.CR 21-152 (IMA)(AYS) 2023 WL 2412178 (E.D.N.Y. Feb. 9. 2023)**

Police officers made a "tactical" and "dynamic" entry into Mr. Gabriel's home, breaking into a door or prying it open. Tactical gear includes helmets and tactical vests. This presented a "sudden, jarring and likely frightening situation for all members of the household." at *7. The court held that Mr. Gabriel was in custody and that officers were required to Mirandize him.

- **United States v. Dzionara-Norsen, No. 21-454-cr, 2024 WL 191803 (2d Cir. Jan. 18, 2024)**

The suspect was interviewed just outside his apartment door and the Court ruled that the interview, which was recorded, lasted for about eighteen minutes and took place at Dzionara-Norsen's apartment just outside his apartment door; the agents appeared in plain clothes, did not display handcuffs, badges, or weapons, spoke in a conversational tone, and did not make any threats or promises; and Dzionara-Norsen was not physically restrained, at no point asked for an attorney or to stop the interview, and voluntarily returned to resume the interview twice after returning inside to his apartment. Under those circumstances, a reasonable person in Dzionara-Norsen's position would have understood that he was free to leave-indeed, he left the interview to retrieve items from his apartment twice with no repercussions. By contrast, in Mr. Rankin's case he was escorted by two/three agents to the back bedroom, cornered by 2 FBI agents, one of whom blocked the door so the defendant could not leave, and when that agent moved from the doorway, another agent replaced him. The officers entered the home with their guns drawn, then put the guns in their holsters with the guns still visible. They separated the defendant from his mother and his cellphone so he could not communicate with anybody. The officers interrogated the defendant for 52 minutes.

- **United States v. Soto, No. 13-CR-76 (MKB), 2014 WL 3695990, at *5 (E.D.N.Y July 24, 2014)**

The officers' firearms were not displayed or visible and there was no evidence in the record that the officers' body language or tone was of an aggressive or intimidating nature. The court held that the defendant was not in custody. The "ultimate inquiry" for determining Miranda custody is whether a reasonable person in Defendant's position would have

considered himself subject to a restraint on freedom of the degree associated with formal arrest. United States v. Wilson, 100 F. Supp. 3d 268,278 (E.D.N.Y. 2015). "For the short period of time prior to Defendant's arrest, lasting approximately fifteen minutes, only two CBP officers were in the room with him, meaning the atmosphere was not significantly 'police dominated.'" Id at 279. "Defendant was not placed in handcuffs, which are the 'hallmark' of formal arrest, until he was actually formally arrested.

- **United States v. Carr, 63 F. Supp.3d 226, 236 (E.D.N.Y 2014)**

Carr was physically removed from the public screening area and escorted by four armed officers to a separate, private pat-down room. (Tr. 84:22-85:18, 104:5-10.) He was directed to sit on a bench with his back to the wall and three of the four officers who escorted him into the room surrounded him. (Tr. 42:19-43:4, 91:18, 93:6-7.) While no handguns were drawn, and even assuming that Carr was not immediately handcuffed when he was brought into the pat-down room, the totality of the circumstances, including Carr's removal from the public area to the private pat-down room, the manner in which he was escorted by two officers, each with both hands on Carr, and the CBP-dominated atmosphere in the room, strongly suggest a degree of restraint associated with formal arrest.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

Roger V. Archibald